IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROGER CHEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:10-CV-1039-D |
| VS. | § | |
| | § | |
| HIGHLAND CAPITAL | § | |
| MANAGEMENT, L.P., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Roger Chen ("Chen") brought this action against defendant Highland Capital Management, L.P. ("Highland Capital") seeking to recover under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. After the parties settled the case through mediation, a dispute arose concerning the terms of the settlement.[1] Chen moves the court to enforce what he contends is the settlement agreement reached during mediation. Highland Capital moves to enforce the version of the settlement agreement that it maintains was agreed to during the process of drafting the formal settlement document, and it also moves for sanctions. For the reasons that follow, the court denies Chen's motion to enforce, grants Highland Capital's motion to enforce, and denies Highland

---

[1]Chen and Highland Capital both acknowledge that the case settled. *See* P. Mot. 1 ("This case was settled in mediation[.]"); D. Mot. 1 ("[Highland Capital] and [Chen] reached settlement in this matter at mediation[.]").

Capital's motion for sanctions.[2]

I

Chen sued Highland Capital to recover for alleged workplace discrimination. The parties settled the suit during mediation. The written settlement agreement signed on June 22, 2012 (the "June 22, 2012 Settlement Agreement") included a provision in which Chen and Highland Capital agreed that "[t]he settlement terms shall be memor[i]alized in a more comprehensive set of settlement documents to be drafted by Defendant's counsel." D. App. 4. In accordance with this clause, Highland Capital's counsel drafted a "Confidential Release and Settlement Agreement" and emailed it to Chen's counsel for review. Following communications about certain provisions of the draft, Highland Capital's counsel, Cristina Torres, Esquire ("Torres"), prepared a revised settlement agreement ("CRSA"), *see* D. App. 57-74,[3] and emailed it to Chen's counsel, Robert E. Goodman, Jr., Esquire ("Goodman"), on July 25, 2012, at 11:09 a.m. In her email, Torres stated that she had "attached the revised settlement agreement (clean and redline showing the changes to the last draft). I trust this

---

[2]Due to confidentiality provisions in the settlement agreements, Highland Capital filed under seal its appendix in support of its motion for sanctions and to enforce settlement agreement and response to Chen's motion to enforce mediation settlement agreement. Chen in turn filed under seal his appendix in response to Highland Capital's motion for sanctions, response to Highland Capital's motion to enforce unsigned further settlement agreement, and reply to Highland Capital's response to Chen's motion to enforce mediated settlement agreement. The court concludes that this memorandum opinion and order does not disclose information that should be maintained under seal, and it is therefore being filed as a publicly-available document.

[3]The CRSA is found at D. App. 57-65. The redlined version showing the changes made to the prior draft is found at *id.* 66-74.

resolves the matter." *Id.* at 55.  Within 90 minutes, at 12:27 p.m., Goodman responded to Torres by email: "It is fine.  We'll get it signed.  Thank you for bending toward justice.  Given lapse of time, do you have the checks?" *Id.* at 77.

Chen refused to sign the CRSA.  Theodore C. Anderson, Esquire, another attorney representing Chen, emailed Torres asking "Why don't we just go with the mediated Settlement Agreement?  I would exchange Motion to Dismiss with prejudice for a check to hold in trust pending dismissal.  Then we would just operate under the mediated Settlement Agreement.  Is that doable?" *Id.* at 81. Torres responded that Highland Capital could not agree to this and that it would "be moving forward with a motion to enforce the settlement agreement that [Goodman] already agreed to." *Id.*

Within a few days of this email exchange, Chen filed his motion to enforce the June 22, 2012 Settlement Agreement.  Highland Capital in turn filed a motion for sanctions and to enforce the CRSA.

II

The court turns first to Chen's motion to enforce the June 22, 2012 Settlement Agreement and Highland Capital's motion to enforce the CRSA.

A

Federal law determines whether a settlement agreement is valid "where [as here] the substantive rights and liabilities of the parties derive from federal law." *Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984).  Under federal law, settlement agreements are contracts. *Guidry v. Halliburton Geophysical Servs., Inc.*, 976 F.2d 938, 940

(5th Cir. 1992). A binding settlement "agreement exists where there is a manifestation of mutual assent, usually in the form of an offer and an acceptance." *Lopez v. Kempthorne*, 2010 WL 4639046, at *4 (S.D. Tex. Nov. 5, 2010) (citing *Turner Marine Fleeting, Inc. v. Quality Fab & Mech., Inc.*, 2002 WL 31819199, at *4 (E.D. La. Dec. 13, 2002)). "A district court may exercise its discretion to enforce a settlement agreement where one party to a suit has initially agreed to a settlement but later refused to execute a formal agreement reciting the terms of the settlement." *Weaver v. World Fin. Corp. of Tex.*, 2010 WL 1904561, at *2 (N.D. Tex. May 12, 2010) (Fish, J.) (citing *Daftary* v. *Metro. Life Ins. Co.*, 136 F.3d 137, 1998 WL 30059, at *1 (5th Cir. Jan. 12, 1998) (per curiam) ("*Daftary II*")). "Where a party has knowingly and voluntarily agreed to settle his claims and no change of circumstances warrants repudiation of the agreement, the courts will enforce the settlement agreement." *Id.* (quoting *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994)).

B

Chen's counsel (Goodman) created a binding agreement when he wrote in response to Torres' email transmitting the CRSA: "It is fine. We'll get it signed. Thank you for bending toward justice. Given lapse of time, do you have the checks?" D. App. 77. Chen argues that Goodman's response was insufficient to manifest assent to the CRSA, especially given that the purpose of the negotiations was to obtain a signed agreement. But "[f]ederal law does not require settlement agreements to be reduced to writing." *E.E.O.C. v. Phillip Servs. Corp.*, 635 F.3d 164, 167 (5th Cir. 2011) (citing *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981) (per curiam)). Acceptance is possible through any

- 4 -

manifestation of assent that occurs in any reasonable manner. *See* Restatement (Second) of Contracts § 50, cmt. a (1981).[4] To be sure, the parties intended in the June 22, 2012 Settlement Agreement that the terms be memorialized in a more comprehensive set of settlement documents to be drafted by Highland Capital's counsel. Highland Capital's counsel did draft those documents and made necessary revisions. Goodman then bound Chen to the terms of the revised CRSA that Torres prepared and transmitted on July 25, 2012 when he stated in response to her transmittal, and without qualification, "It is fine. We'll get it signed." D. App. 77.

Chen maintains that he did not assent, and he attempts to distinguish *Daftary II*,[5] an unpublished opinion in which the Fifth Circuit affirmed this court's decision enforcing a settlement agreement that the parties agreed to orally, but that the plaintiff later refused to sign. *See Daftary II*, 1998 WL 30059, at *1, *aff'g Daftary v. Metro. Life Ins. Co.*, No. 3:94-CV-1338-D (N.D. Tex. May 22, 1997) (Fitzwater, J.) ("*Daftary I*").[6] Chen argues that the settlement agreement in *Daftary II* was not a "settlement agreement as such," "but only an agreement to arbitrate such claims on a high-low basis." P. Resp. 7. The court disagrees that

---

[4]"The Restatements embody core principles of common law." *Lopez*, 2010 WL 4639046, at *4 (citing *Deville v. United States ex rel. Dep't of Veterans Affairs*, 202 Fed. Appx. 761, 763 n.3 (5th Cir. 2006) (per curiam)).

[5]Chen also attempts to distinguish other cases on which Highland Capital relies, but the court will focus on *Daftary II* because it addresses and affirms a decision rendered by the undersigned.

[6]A copy of this court's order in *Daftary I* is attached as an exhibit to this memorandum opinion and order.

*Daftary II* is distinguishable on this basis.

In *Daftary II* the panel noted that the plaintiff (Daftary) sued the defendant (Metropolitan Life) alleging national origin discrimination and retaliation. *Daftary II*, 1998 WL 30059, at *1. The parties orally agreed to settle the lawsuit, the agreement was reduced to writing after negotiation between counsel and consultation with their respective clients, but Daftary refused to sign the agreement. This court granted Metropolitan Life's motion to enforce the settlement agreement, finding that the terms stated in the final draft of the settlement agreement were the terms on which Daftary had authorized his counsel to settle the case. On appeal, the Fifth Circuit affirmed for the reasons stated by this court. *Id.* ("For the reasons stated by the district court in its Order entered May 22, 1997, the Judgment entered of even date therewith is AFFIRMED." (bold font omitted)). This court's order in *Daftary I* clearly reflects the finding that Daftary had entered into a binding agreement to settle his lawsuit. *Daftary I*, No. 3:94-CV-1338-D, order at 2 ("The issue, instead, is whether Daftary knowingly and voluntarily consented to the settlement agreement. The court finds that he did."). Regardless of the *nature* of the settlement, the point is that, in *Daftary I*, this court held that an oral agreement to settle was binding, even though the plaintiff refused to sign the written agreement after it was reduced to writing, and the Fifth Circuit affirmed that decision in *Daftary II*.

Chen also maintains that, in subsequent litigation involving the *Daftary I* parties, this court denied the defendant's motion for summary judgment seeking to enforce an unsigned settlement agreement entered into by the plaintiff's attorney during mediation. *See Metro.*

*Life Ins. Co. v. Daftary*, 2004 WL 1960101, *4 (N.D. Tex. Sept. 3, 2004) (Fitzwater, J.) ("*Daftary III*"). Chen overlooks, however, that this court in *Daftary III* denied summary judgment because the plaintiff had submitted an affidavit calling into question his counsel's authority to settle on the terms in question. *Id.* This was sufficient at the summary judgment stage to create a fact issue and to overcome the "rule that an attorney of record is presumed to have authority to compromise and settle litigation of his client." *Id.* (quoting *Mid-S. Towing*, 733 F.2d at 390 (citations and emphasis omitted)). Unlike *Daftary III*, Chen neither argues nor has he produced evidence that his counsel (Goodman) lacked authority to settle this case.

Chen contends that *Murphy v. YRC, Inc.*, 2011 WL 3902760 (W.D. Tex. Sept. 6, 2011), is more instructive than is *Daftary II* because the *Murphy* court enforced a mediated settlement agreement when the plaintiff refused to sign a later, formal agreement, even though the plaintiff's attorney had previously agreed to the terms of the formal agreement. The *Murphy* court, however, did not address whether the parties formed an agreement concerning the later, formal agreement. This may be so because the defendant's motion sought to enforce the mediated settlement agreement, not the formal settlement agreement. Here, by contrast, Highland Capital seeks to enforce the CRSA and argues that the parties consummated that agreement via the email between Torres and Goodman. Thus, unlike in *Murphy*, the question whether Chen (through Goodman) assented to the revised CRSA transmitted on July 25, 2012 is squarely presented, and, for the reasons discussed above, the court finds that he did.

Accordingly, the court grants Highland Capital's August 27, 2012 motion to enforce settlement agreement and denies Chen's August 10, 2012 motion to enforce mediation settlement agreement. The court by judgment filed today orders that the parties perform the CRSA that Torres sent to Goodman by email on July 25, 2012, set out at D. App. 57-65.

III

Highland Capital also moves for sanctions of two types: first, striking Chen's motion to enforce, on the ground that Chen violated N.D. Tex. Civ. R. 7.1 and Fed. R. Civ. P. 37(a)(1) by failing to confer with Highland Capital before filing his motion, and instead acting in bad faith by requesting a draft of Highland Capital's motion to enforce and then preemptively filing his own motion; and, second, awarding Highland Capital its reasonable and necessary attorney's fees and costs incurred in enforcing the CRSA, opposing Chen's motion, and seeking sanctions and any other relief the court deems proper. The court denies the motion.

First, Rule 37(a)(1) is inapposite because it imposes a conference requirement when a party moves for an order compelling disclosure or discovery. And although N.D. Tex. Civ. R. 7.1(a) imposes a conference requirement that should not be disregarded, it does not contain a sanction provision, and Highland Capital does not identify another provision of the local civil rules that would support the entry of sanctions for violating Rule 7.1(a).

Second, Highland Capital has cited no basis for recovering reasonable and necessary attorney's fees and costs incurred in enforcing the CRSA, opposing Chen's motion, and seeking sanctions and any other relief the court deems proper. Absent a clear indication of

the authority on which Highland Capital relies, "the court cannot apply the proper standards to assess whether it is entitled to attorney's fees." *Lexington Ins. Co. v. Unity/Waterford-Fair Oaks, Ltd.*, 2001 WL 694582, at *3 (N.D. Tex. June 14, 2001) (Fitzwater, J.) (denying motion for sanctions including "reasonable and necessary attorney's fees incurred in preparing and filing the motion to enforce settlement"). And if Highland Capital is attempting to rely on this court's inherent power, "the standard for the imposition of sanctions using the court's inherent powers is extremely high." *Pillar Panama, S.A. v. DeLape*, 326 Fed. Appx. 740, 744 (5th Cir. 2009) (per curiam) (quoting *Goldin v. Bartholow*, 166 F.3d 710, 722 (5th Cir. 1999)); *see also Johnson v. Hankook Tire Am. Corp.*, 449 Fed. Appx. 329, 332 (5th Cir. 2011) (per curiam) ("When inherent powers are invoked . . . they must be exercised with restraint and discretion." (internal quotation marks and citations omitted)). While the court agrees that the conference requirement of Rule 7.1(a) is important, it cannot say that Chen should be sanctioned under the circumstances presented here.

\*   \*   \*

For the reasons explained, the court denies Chen's August 10, 2012 motion to enforce mediation settlement agreement, grants Highland Capital's August 27, 2012 motion to enforce the settlement agreement, and denies Highland Capital's motion for sanctions. The court has filed a judgment today enforcing the parties' compliance with the CRSA.

**SO ORDERED.**

November 27, 2012.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MAY 22 1997

| | | |
|---|---|---|
| ASHOK C. DAFTARY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:94-CV-1338-D |
| VS. | § | |
| | § | |
| METROPOLITAN LIFE | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Following <u>de novo</u> review of the magistrate judge's April 15, 1997 findings, conclusions, and recommendation, the court concludes that the findings and conclusions are correct. It is therefore ordered that the findings, conclusions, and recommendation of the United States Magistrate Judge are adopted.

Plaintiff Ashok C. Daftary ("Daftary") advances two objections that merit specific rulings. Daftary asserts that the settlement is unenforceable because it is illegal under <u>Texas</u> law. Texas law does not control this case. Daftary's suit alleges national origin discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et seq</u>. Because this case deals with the operation of a Congressional statutory scheme, the federal courts are competent to determine whether a settlement exists without resort to state law. <u>Fulgence v. J. Ray McDermott & Co.</u>, 662 F.2d 1207, 1209 (5th Cir. 1981) (per curiam) (Title VII case) (citing <u>D'Oench, Duhme & Co. v. FDIC</u>, 315 U.S. 447 (1942) (Jackson, J. concurring)). State law is not absorbed as the rule of decision governing Title VII settlement agreements. <u>Id.</u> The Supreme Court has previously established the prerequisites for the validity of settlement agreements in Title VII suits. <u>See</u>

ENTERED ON DOCKET
MAY 23 1997 PURSUANT
TO F. R. C. P. RULES
58 AND 79a

<u>Alexander v. Gardner-Denver Co.</u>, 415 U.S. 36, 52 n.15 (1974) (employee must knowingly and voluntarily consent to settlement agreement under which he waives his right to pursue Title VII action). Whether the contract contains an "illegal" clause is not part of the test. The issue, instead, is whether Daftary knowingly and voluntarily consented to the settlement agreement. The court finds that he did. And because he agreed to the settlement prior to enactment of the Small Business Protection Act, the enactment of that law could not have affected his decision to settle.

The court agrees with the magistrate judge that Daftary's written arbitration agreement argument is without merit. Daftary agreed orally to enter into a written settlement agreement. Under <u>Fulgence</u>, "[i]f a party to a Title VII suit who has previously authorized a settlement changes his mind when presented with the settlement documents, that party remains bound by the terms of the agreement. <u>Fulgence</u>, 662 F.2d at 1209 (citing cases). This means Daftary is bound by the agreement, the terms of which this court has the power to enforce. The court can compel him to execute the writing that is the necessary predicate for arbitration. Under such circumstances, the writing requirement for arbitration is satisfied.

Accordingly, defendant's May 1, 1996 motion to enforce settlement is granted. By judgment filed today, the terms of the settlement are enforced and this action is otherwise dismissed with prejudice.

**SO ORDERED.**

May __22__, 1997.

*[signature]*
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE